# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**GRANT EUGENE ERICKSEN,**

      **Plaintiff,**

**v.**                                                                                    **Civil Action No. 2:08cv104**
                                                                                   **(Judge Maxwell)**

**ANGIE BOOTH, DEBRA COTTRELL,**
**TERESA WAID AND JIM RUBENSTEIN,**

      **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

On October 16, 2008, the *pro se* plaintiff initiated this case by filing a civil rights complaint against the above-named defendant. (Dckt. 1.) On December 10, 2008, the undersigned conducted a preliminary review of the complaint, determined that summary dismissal was not warranted at that time and directed the defendants to file an answer. (Dckt. 10.) The defendants filed an answer on December 30, 2008 (Dckt. 12) and a Motion to Dismiss on January 12, 2009 (Dckt. 14).

Because the plaintiff is proceeding *pro se*, the Court issued a Roseboro Notice on January 13, 2009, advising the plaintiff of his right to file a response to the defendants' motion. Dckt. 17. The plaintiff filed a response in opposition to the defendants' motion on January 28, 2009. Dckt. 20. The defendants filed a reply on February 4, 2009. Dckt. 21.

On March 4, 2009, the plaintiff filed a Motion to Strike. Dckt. 27. In his motion, the plaintiff seeks to strike paragraph nine on page four of the defendants' Memorandum in Support of their motion to dismiss as impertinent and scandalous. The plaintiff also seeks to strike Exhibit Six to that document for the same reason.

On March 11, 2009, the defendants filed a Response in Opposition to the plaintiff's Motion to Strike. Dckt. 28. In their response, the defendants' asserts that the materials in question are pertinent to their defense and should not be stricken from the record.

## II. Contentions of the Parties

### A. The Complaint

In the complaint, the plaintiff makes a due process challenge to a classification and program recommendation which recommends he attend sex offender treatment. The plaintiff asserts that the recommendation is improper. In support of this claim, the plaintiff asserts that although he was originally charged with First Degree Sexual Assault, that charge was dropped upon his guilty plea to a kidnapping charge. Moreover, the plaintiff asserts that neither in his plea agreement, nor at sentencing, was any evidence offered to show that the kidnapping was sexually motivated. The plaintiff asserts that the sex offender recommendation violates his due process rights because it was applied capriciously and harms his reputation.

### B. The Defendants' Answer and Motion to Dismiss

In their answer, the defendants generally deny that any violation of the plaintiff's rights occurred and assert twenty-four defenses to the plaintiff's claims. In their motion to dismiss, the defendants assert that the complaint should be dismissed for the following reasons:

(1) the plaintiff has no liberty interest against being recommended for sex offender programming and therefore has no cognizable claim that the defendants violated his due process rights;

(2) Assuming the plaintiff does have some cognizable liberty or property interest in being recommended for sex offender programming, the plaintiff received all the substantive and

procedural due process to which he was entitled;

(3) The due process clause of the Constitution of the United States does not prohibit rehabilitative programming that seeks to address matters to which the inmate did not plead guilty;

(4) A recommendation that the plaintiff participate in sex offender programming does not implicate his constitutional rights against compelled incrimination because the plaintiff is not required to admit to any such behavior during the treatment; and

(5) The plaintiff's claim of injury is barred by the two-year statute of limitations because he was recommended for the treatment program more than two years prior to the institution of this action.

### C. The Petitioner's Response

In his response to the defendants' motion, the petitioner again argues that there was no sexually component to the kidnapping charge to which he pleaded guilty. Dckt. 20 at 2. The petitioner asserts that the defendants merely rely on a post sentence investigation report that he has never had the opportunity to challenge. *Id.* at 2-3. Next, the petitioner asserts that the burden of proof lies with the defendants to prove the allegations that the kidnapping had a sexual component. *Id.* at 3. Finally, the petitioner asserts that "a stigmatizing accusation that imposes a substantial disability on a person, that person's liberty interests may be affected, and due process demands that he be given a right to a name-clearing." *Id.* at 4 (citing O'Neill v. City of Auburn, 23 F.3d 685 (2d Cir. 1994)).

### D. The Defendants' Reply

In reply to the plaintiff's response, the defendants assert that the plea/sentencing transcripts from the plaintiff's criminal proceedings establish that the prosecutor did allege a sexual motivation

for the kidnapping. Dckt. 21 at 1-4. In addition, the defendants assert that the plaintiff has failed to show an "atypical of significant hardship stemming from the recommendation of sex offender programming which would demonstrate a liberty interest." *Id.* at 4-10. Finally, the defendants assert that even assuming a liberty interest existed, "due process would not place trial-type procedural safeguards upon the Huttonsville Correction Center prior to recommending programs." *Id.* at 10-12.

### III. Standard of Review

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Advanced Health-Care Services, Inc. v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Further, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint are true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S.41, 45-46 (1957).

However, when a motion to dismiss is accompanied by affidavits, exhibits and other documents, the motion will be construed as a motion for summary judgment. Summary judgment is appropriate "if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of

material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party is required "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id. at 322.

When a moving party supports its Rule 56 motion with affidavits and other materials, the opposing party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation omitted).

### IV. Analysis

The Due Process Clauses of the Fifth and Fourteenth Amendments provide that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. V and XIV, §1. "A due process violation occurs when a state actor deprives an individual of a protected liberty or property interest without providing adequate process." Grennier v. Frank, 2005 WL 2076432 *2 (W.D.Wis. Aug. 25, 2005). Thus, in determining whether a due process violation occurred, a court must first determine whether a protected liberty interest was at stake. Sandin v. Connor, 515 U.S. 472 (1995). A violation of the due process clause arises when an inmate is subject to a condition of his confinement that exceeds his sentence. *Id.* at 484.

However, outside the due process clause itself, States may create additional liberty interests. *Id.* Nonetheless, liberty interests created by state regulations are generally limited to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Cause of its own force . . . nonetheless imposes atypical and

5

significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* See also Garrett v. Angelone, 940 F. Supp. 933, 943 (W.D. Va. 1996), *aff'd,* 107 F. 3d 865 (4th Cir. 1997)("a prison regulation creates a liberty interest and implicates the due process protections only where the regulation imposes upon the inmate conditions which dramatically depart from the expected conditions of his sentence").

In Jones v. Puckett, 160 F.Supp.2d 1016 (W.D.Wisc Aug. 28, 2001), a case similar to this one, the Western District of Wisconsin found:

> It is common for persons entering prison to have an evaluation of the reasons for their criminal behavior and their treatment needs, for the resulting evaluations to be recorded in their records and for the authorities who make programming and parole decisions to base their decisions in whole or in part on their sense of the effort a particular inmate has made to confront the problems that have been identified as contributing to his criminal conduct. Because it is common procedure, plaintiff cannot argue that his evaluation and identification as a person in need of sex offender treatment is the 'atypical and significant hardship on the inmate' that creates a liberty interest.

Puckett at 1023 (citing Sandin v. Conner, 515 U.S. at 484).

Moreover, the Court noted that the "Plaintiff's identification as a person in need of sex offender treatment was not made a matter of public knowledge by defendants and the identification did not carry with it mandatory participation in treatment . . ." *Id.* Finally, the Court noted that "[e]ven if plaintiff's identification as being a sex offender in need of treatment required some due process, defendants provided plaintiff with adequate process when the program review committee met to decide that he needed to complete sex offender treatment program." *Id.* at 1024. In addition, the plaintiff in Puckett had an opportunity to be heard regarding his disagreement with the recommendation and had further administrative review of that decision. *Id.*

The circumstances of this case are much like those in Puckett. Here, the plaintiff has been

6

recommended for sex offender treatment. He is not required to attend such treatment, and in fact, has refused to do so. The plaintiff alleges no adverse consequences to his refusal to participate. To the extent that the plaintiff asserts that his failure to participate may adversely affect his future parole eligibility, that allegation is purely speculative. Moreover, whether the plaintiff's institutional record reflects a recommendation of sex offender programming is largely irrelevant to parole consideration, as the parole board will have access to the same post sentence investigation report that Huttonsville staff used to make the recommendation in the first place.

Additionally, the plaintiff's reliance on O'Neill v. City of Auburn, *supra*, is misplaced. O'Neill is part of a line of cases following Wisconsin v. Constantineau, 400 U.S. 433 (1971), which established that a liberty interest might exist where there is a stigmatizing governmental accusation made in conjunction with the imposition of a substantial disability of deprivation. However, in O'Neill, the Second Circuit specifically noted that "[w]hile Wisconsin v. Constantineau . . . suggested that [a] liberty interest might be implicated whenever the government imposed stigma, it is clear by now that simple damage to reputation does not give rise to a liberty interest claim; rather, the damage must be accompanied by some significant deprivation" of an interest protected by state or federal law, or by an alteration of legal status. O'Neill at 691 (citing Paul v. Davis, 424 U.S. 693, 708-712 (1976)).

Here, there has been no allegation that the staff at Huttonsville has done anything to broadcast the plaintiff's recommendation for sex offender programming so as to stigmatize his reputation. The plaintiff does not allege that Huttonsville staff have made his sex offender recommendation public knowledge or that they have alerted other inmates to the plaintiff's programming recommendation. Moreover, since the plaintiff has refused participation in the

7

program, no one, other than the plaintiff and staff, even knows that the recommendation was made.

Furthermore, as noted by the defendants in their response, the only deprivation that the plaintiff alleges is that he will be "poorly regarded by [his] fellow inmates or by the parole board." However, being poorly regarded by other prison inmates does not rise to the level of a constitutional deprivation. In addition, to the extent that the plaintiff argues that his parole eligibility determination may be harmed by a recommendation of sex offender treatment, as previously mentioned, the parole board would have access to information about the plaintiff's alleged deviant sexually behavior from his criminal records anyway. Thus, the plaintiff can assert no harm.

## V. Recommendation

For the foregoing reasons, the undersigned finds that the plaintiff does not have a cognizable liberty interest against being recommended for sex offender programming. And, even if he did, the plaintiff has received sufficient process to protect such interest.[1] Therefore, the undersigned recommends that the defendants' Motion to Dismiss (dckt. 14) be **GRANTED**, the plaintiff's Motion to Dismiss (dckt. 27) be **DENIED**,[2] and the plaintiff's complaint (dckt. 1) be **DISMISSED**

---

[1] According to the plaintiff, the sex offender treatment recommendation was made by his case manager, Angie Booth. When the plaintiff objected, he had the opportunity to discuss the recommendation with Ms. Booth and state his objection. Ms. Booth explained her reasons for making the recommendation, but did not change it. The plaintiff filed an institutional appeal of the recommendation to Warden Teresa Waid. As a result, the plaintiff met with his Unit Manager, Randy Shreve. Mr. Shreve instructed the plaintiff to take the matter to the Director of Classification, Debra Cottrell. Ms. Cottrell confirmed and upheld the recommendation. The plaintiff also grieved that decision to Warden Waid. The plaintiff's appeal was denied. The plaintiff followed the administrative appeal process all the way through to its final lever, the Commissioner of the West Virginia Division of Corrections. The recommendation was upheld. Thus, even assuming that some process was due, e plaintiff has received sufficient process.

[2] In the motion, the plaintiff requests that the Court strike a certain portion of the plaintiff's institutional discipline history mentioned by the defendants' in their memorandum in support of their motion to dismiss. Moreover, the plaintiff requests that an exhibit to the memorandum containing the same information be stricken. The plaintiff alleges that the defendants' mentioning of these allegations is

8

**with prejudice** from the active docket of this Court.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Robert E. Maxwell, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: May 5, 2009.

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE

---

"impertinent and scandalous." However, although this information was not necessary to the defendants' defense of the instant claims, the undersigned has not considered that information in making its recommendation. Thus, any mention of that information by the defendants was harmless and the plaintiff's motion should be denied.